UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| PRESERVE FRENCH CREEK, INC., | 5:25-CV-05045-RAL |
| Plaintiff, | |
| | OPINION AND ORDER GRANTING |
| vs. | MOTIONS TO DISMISS |
| CORBIN HERMAN, UNKNOWN OFFICIALS OF CITY OF CUSTER, SOUTH DAKOTA, CITY OF CUSTER, SOUTH DAKOTA, HUNTER ROBERTS, UNKNOWN OFFICIALS OF DEPARTMENT OF AGRICULTURE AND NATURAL RESOURCES, SOUTH DAKOTA DEPARTMENT OF AGRICULTURE AND NATURAL RESOURCES, DEWILD, GRANT, RECKERT AND ASSOCIATES COMPANY, | |
| Defendants. | |

In May 2025, Plaintiff Preserve French Creek, Inc. (PFC) initiated this lawsuit against Defendants[1] City of Custer (City); Mayor Corbin Herman; the South Dakota Department of Agriculture and Natural Resources (DANR); Secretary Hunter Roberts; Unknown Officials of DANR; and Dewild, Grant, Reckert and Associates Company (DGR Engineering) seeking injunctive relief to prevent discharge from an upgraded wastewater treatment plant into French

---

[1] There are three distinct groups of Defendants: (1) the City Defendants, which includes the City and Herman; (2) the DANR Defendants, which includes the DANR, Roberts, and Unknown Officials of DANR; and (3) DGR Engineering. This Court will refer to the subclasses of Defendants as (1) the "City Defendants," (2) the "DANR Defendants," and (3) "DGR Engineering" respectively.

1

Creek, declaratory relief, and civil penalties. Doc. 1. PFC alleges violations of 1) civil rights under 42 U.S.C. § 1983, asserting a violation of PFC's procedural due process rights under the Fourteenth Amendment; 2) the Clean Water Act (CWA); and 3) South Dakota law. Id. PFC moved for a temporary restraining order (TRO) and preliminary injunction, Doc. 14, and the parties entered into a Stipulation that the City would not discharge effluent into French Creek until this Court ruled on the motion, Doc. 23. This Court accordingly entered an injunction, Doc. 25, without having weighed or ruled on any of the Dataphase factors. PFC then filed an Amended Complaint with attached affidavits of members and a notice of intent to sue letter. Docs. 37, 37-1, 37-2, 37-3, 37-4. All Defendants moved to dismiss, Docs. 40, 42, 44, and DGR Engineering alternatively moved for summary judgment, Doc. 44. PFC opposes the motions. Doc. 53.

## I.    Facts and Procedural History

This Opinion and Order takes the facts from PFC's Amended Complaint and supporting record materials.[2] PFC is a South Dakota non-profit corporation founded in 2023 and "comprised of concerned Custer County citizens who organized to preserve the French Creek from the discharge of any treated wastewater from the City [] under the Permit." Doc. 37 ¶ 7. PFC attached to its Amended Complaint three affidavits from PFC members: Neil Schanzenbach, Blair Waite, and Royce Huber. Docs. 37-1, 37-2, 37-3.

Schanzenbach owns a one-acre lot on French Creek with a well approximately fifty feet from French Creek that is approximately fifty to seventy feet deep. Doc. 37-1 ¶¶ 1–5. Schanzenbach describes that his family uses French Creek for wading, panning for gold,[3] irrigating

---

[2] This Court makes no findings of fact in ruling on motions to dismiss.

[3] The Custer Expedition found gold in French Creek during its foray into the Black Hills then held as part of the Great Sioux Indian Reservation. See United States v. Sioux Nation of Indians, 448

his garden, and watering his lawn. Id. ¶¶ 6–7. Waite owns land on both sides of French Creek and has a well approximately 300 to 400 feet from French Creek that is approximately ninety-six feet deep. Doc. 37-2 ¶¶ 1–4. Waite states that he presently uses French Creek for drinking water for his livestock, watering his lawn, fishing and wading, and that his kids used to swim in French Creek when they lived on the property. Id. ¶¶ 6–10. Huber also owns land on French Creek with a well approximately 160 feet from the creek and approximately 150 feet deep. Doc. 37-3 ¶¶ 1–4. Huber states that he uses the creek for fishing, wading, swimming, and panning for gold. Id. ¶ 6. Huber has hosted a family reunion on his property every year for the last ten years and considers French Creek a "center piece" and "cherished part" of his property. Id. ¶¶ 9–10. Huber states that the 1200 feet of creek bed within his property is the reason he and his wife purchased the property. Id. ¶¶ 10–11. All three PFC members fear for their ability to continue to use French Creek because of the issuance of the Permit and potential for the City to discharge effluent into it. Docs. 37-1, 37-2, 37-3.

Under the CWA and with approval from the Environmental Protection Agency (EPA), South Dakota is authorized to implement a National Pollution Discharge Elimination System (NPDES). Doc. 37 ¶ 15. South Dakota's NPDES program is administered by the DANR. Id. ¶ 16. The DANR is responsible for reviewing and issuing Surface Water Discharge (SWD) permits. Id. ¶ 17. In February 2020, the City and Mayor Herman began the application process for obtaining a SWD permit from the "DANR for effluent to be discharged from Custer's Wastewater Facility into French Creek." Id. ¶ 18 (citation omitted). PFC alleges that the City's plan to discharge effluent into French Creek bypasses four alternative options. Id. ¶ 21.

---

U.S. 371, 374–77 (1980). The report of gold in French Creek set off a gold rush and led to the Native Americans losing the Black Hills. See id. at 377–384.

3

French Creek is a "relatively permanent tributary of the Cheyenne River" that flows eastward through Custer State Park and empties into the Cheyenne River near the Pine Ridge Reservation. Id. ¶ 19. The Cheyenne River is a tributary of the Missouri River. Id. ¶ 20.

On January 13, 2021, the DANR and Secretary Roberts issued the City a SWD permit (the Permit) under the South Dakota Water Pollution Control Act and the Administrative Rules of South Dakota, Article 74:52. Id. ¶¶ 22–23. Under the Permit, the City was authorized to discharge effluent from the City's wastewater facility into Flynn Creek, the current discharge location, and then into French Creek upon completion of the City's wastewater facility upgrades. Doc. 1-3 at 1. The Permit is effective from April 1, 2021, to March 31, 2026.[4] Id. The Permit states any noncompliance with the Permit "constitutes a violation of the South Dakota Water Pollution Control Act and the federal [CWA]." Doc. 37 ¶ 24 (citing Doc. 1-3 at 28).

Under South Dakota statute, "the secretary shall provide an opportunity for public hearing, with notice of the opportunity for hearing, in accordance with applicable laws, rules, and regulations" before issuing a SWD permit. Id. ¶ 25 (quoting SDCL § 34A-2-35). South Dakota Administrative Rule 74:52:05:13 details the notice required for a SWD permit:

> Public notice of activities described in this chapter shall be given by the following methods:
> ...
> (2) For major permits, general SWD permits, and permits that contain sewage sludge application plans, by publication of a notice in a daily or weekly newspaper within the area affected by the facility or activity; and
> (3) By any other method that gives actual notice of the action in question to the persons potentially affected by it, including press releases or any other forum or medium to elicit public participation.

---

[4] The City appears not to have completed the facility upgrades or discharged effluent into French Creek yet.

Doc. 37 ¶ 26 (cleaned up) (quoting ARSD 74:52:05:13). Plaintiffs allege that Defendants failed to provide "actual notice of the action in question to the persons potentially affected by it." Id. ¶ 27.

In addition to providing notice and an opportunity to be heard, the secretary is also required to conduct an analysis to determine whether French Creek deserved a higher classification for beneficial use based on attainable use or uses the secretary identified during the analysis under South Dakota Administrative Rules. Doc. 37 ¶ 29 (citing ARSD 74:51:01:02:01). French Creek's designated uses are cold-water marginal fish life propagation and limited-contact recreation waters. Doc. 37 ¶ 30. PFC alleges that French Creek's actual attainable use, however, involves full immersion recreation activities. Id. ¶ 31. Under the South Dakota Administrative Rules, full immersion recreation activities require more stringent discharge criteria because this activity would contemplate humans submerging themselves underwater. Id. ¶ 32 (citing ARSD 74:51:01:45 to 74:51:01:53). PFC alleges that Secretary Roberts failed to conduct an analysis under the administrative rules, and due to this oversight, the Permit only considers discharge criteria for cold-water marginal fish life propagations and limited-contact recreation, not immersion recreation activities. Doc. 37 ¶ 33–34.

In November 2022, concerned citizens and Dr. Scott Kenner[5] contacted the DANR regarding their concerns related to the Permit and effluent being discharged into French Creek. Id. ¶ 35. Dr. Kenner advised the DANR of the following opinions related to the Permit:

> a.    The level of ammonia allowed to be discharged under the Permit is greater than the existing water quality concentrations and to a reasonable degree of

---

[5] Dr. Kenner is a Professor Emeritus who has taught civil and environmental engineering at South Dakota School of Mines and Technology for nearly three decades. Doc. 37 ¶ 36. He has been retained by the State of South Dakota on multiple occasions for watershed issues and water quality issues. Id.

scientific probability, the level of ammonia to be discharged will adversely affect the biological integrity of French Creek and will produce "nuisance aquatic life."

b.      The Permit does not set a discharge limit for phosphorous and without a criterion limit, to a reasonable degree of scientific probability, without an appropriate criterion limit, high levels of phosphorous will adversely impact the biological integrity of French Creek and "nuisance aquatic life" will result.

c.      The flow rate was not measured at the actual point of effluent discharge into French Creek; instead, the Permit calculations were based on the flow rate data from a USGS gauge located miles downstream. This is significant because the flow rate was used to calculate the criterion limits allowed under the Permit.

d.      Flow measurements indicate that the flow rate used for the Permit calculations are greater by approximately 420 gallons per minute at the time the measurements were taken.

e.      The significance of the flow measurements referenced indicate that depending on the time of year, French Creek's waters could be comprised of almost 90% effluent discharge from the City.

Id. ¶ 37 (citing Doc. 1-7). According to the "Statement of Basis," discharge at the effluent limits proposed in the draft permit will cause a change in water quality, and a "change in water quality is allowed if the public determines there is a socioeconomic benefit." Doc. 1-6 at 7; Doc. 37 ¶ 38. South Dakota statutory law also prohibits "discharge that will pollute 'or is likely to pollute, impair, or destroy the . . . water, or other natural resources . . . if there is a feasible and prudent alternative consistent with the reasonable requirements of the public health, safety, and welfare.'" Doc. 37 ¶ 39 (quoting SDCL § 34A-10-8). Following the November 2022 meeting, the DANR made no attempt "to determine that the public determined there is a socioeconomic benefit to degrading the water quality of French Creek." Doc. 37 ¶ 41.

Custer County voters had a ballot initiative for a new Local Ordinance in the June 2023 general election stating: "The discharge of any treated water from the Custer City, South Dakota sewage treatment plant into French Creek or its tributaries, within the boundaries of Custer County, South Dakota, is a nuisance." Id. ¶ 42. The citizens of Custer County passed the Local Ordinance. Id. ¶ 43. Neither Custer County nor the City enforced the Local Ordinance. Id. ¶ 44. PFC sought a writ of mandamus to compel enforcement of the Local Ordinance in Circuit Court for the Seventh

Judicial Circuit of South Dakota. <u>See</u> <u>Preserve French Creek, Inc. v. Cnty of Custer</u>, 10 N.W.3d 233, 237 (S.D. 2024). The circuit court denied relief and the Supreme Court of the State of South Dakota affirmed stating that the Local Ordinance was invalid because it was preempted by state law.[6] <u>Id.</u> at 237, 239.

PFC alleges DGR Engineering is continuing construction[7] on the project that would allow for effluent discharge into French Creek. Doc. 37 ¶ 45. PFC alleges that "there are approximately 40 drinking wells within the first 5 miles of the effluent discharge point on French Creek, located as close as 52 feet from the Creek." <u>Id.</u> ¶ 46. PFC then brought this lawsuit in federal court alleging violations of civil rights under 42 U.S.C. § 1983, the CWA, and South Dakota state law. Doc. 1; <u>see also</u> Doc. 37.

PFC, for its procedural due process claim, alleges that PFC has a valuable and constitutionally protected interest in French Creek's water; this interest entitled it to adequate notice and a reasonable opportunity to be heard; Defendants did not provide notice "reasonably calculated to apprise Plaintiff of the impending effluent discharge or the opportunity to be heard before such effluent discharge was allowed to be released[;]" and in doing so, deprived PFC of its "property rights without affording procedural due process and with reckless and callous indifference to that federally protected right." Doc. 37 ¶¶ 50–53. PFC alleges for the CWA violation that "Defendants have violated, and continue to violate, the CWA §§ 301–304, 307–309, 402, and 405, and 33 U.S.C. §§ 1311 and 1342." <u>Id.</u> ¶ 60. PFC alleges that Defendants are

---

[6] Despite the South Dakota Supreme Court deeming the Local Ordinance to be preempted by state law, PFC's position is that the Local Ordinance "evinces that the Citizens of Custer County would have vehemently objected to the [] Permit, had the Citizens of Custer County been given actual notice of the Permit and a fair opportunity to object to the Permit." Doc. 37 at 9 n.1.

[7] DGR Engineering makes clear that it is an engineering firm and is not the contractor building the upgrades.

"knowingly and intentionally pursuing completion of the effluent discharge project from the City to French Creek that will adversely affect the biological integrity of French Creek and will produce 'nuisance aquatic life.'" Id. ¶ 61. PFC claims that Defendants are pursuing completion despite continuous notification of their ongoing violations. Id. ¶ 62. PFC also brings state law claims for violations of the South Dakota Water Pollution Control Act and the Administrative Rules of South Dakota article 74:51 and 74:52. Id. ¶ 66.

## II.    Legal Standards

### A.    Motion to Dismiss under Rule 12(b)(1)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction can be either facial or factual in nature. Moss v. United States, 895 F.3d 1091, 1097 (8th Cir. 2018); Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990). In both circumstances, the plaintiff has the burden of proving subject matter jurisdiction. V S Ltd. P'ship v. Dep't of Hous. & Urban Dev., 235 F.3d 1109, 1112 (8th Cir. 2000). Under a facial attack, the "court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." Jones v. United States, 727 F.3d 844, 846 (8th Cir. 2013). "The plaintiff must assert facts that affirmatively and plausibly suggest that the pleader has the right he claims (here, the right to jurisdiction), rather than facts that are merely consistent with such a right." Stalley v. Cath. Health Initiatives, 509 F.3d 517, 521 (8th Cir. 2007) (citation omitted).

In contrast, where a factual attack is made on the court's subject matter jurisdiction, because "its very power to hear the case" is at issue, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case," without transforming the motion into one for summary judgment. Osborn, 918 F.2d at 730 (citation omitted). In a factual attack

on a court's jurisdiction, "the court considers matters outside the pleadings, and the non-moving party does not have the benefit of [Rule] 12(b)(6) safeguards." Id. at 729 n.6 (cleaned up).  In deciding a factual challenge to subject matter jurisdiction, the court need not view the evidence in the light most favorable to the non-moving party. See id. at 729 n.6, 730.

Under 28 U.S.C. § 1331, federal district courts have jurisdiction over cases arising out of federal law, including federal statutes and the United States Constitution.  Merely citing to a federal statute, however, is not enough to confer federal jurisdiction; the plaintiff must allege sufficient facts to show a plausible right to jurisdiction. See Stalley, 509 F.3d at 521 ("The plaintiff must assert facts that affirmatively and plausibly suggest that the pleader has the right he claims (here, the right to jurisdiction), rather than facts that are merely consistent with such a right.").  Moreover, alleging federal question jurisdiction is not always enough to establish a court's power to hear a case because other bars to jurisdiction may exist. See, e.g., U.S. Const. amend. XI (creating sovereign immunity); Rooker v. Fidelity Tr. Co., 263 U.S. 413 (1923) (describing a district court's lack of appellate jurisdiction over state court rulings); D.C. Ct. of Appeals v. Feldman, 460 U.S. 462 (1983) (same).

Here, Defendants make both facial and factual challenges under Rule 12(b)(1) to subject matter jurisdiction.  The Defendants' facial challenges argue PFC did not allege sufficient facts to plausibly support jurisdiction because the pleaded allegations 1) do not support standing, 2) are barred by Eleventh Amendment Immunity, and 3) are not ripe.  The Defendants' factual challenge under Rule 12(b)(1) contends PFC's procedural due process claim is barred by the Rooker-Feldman doctrine.

**B.  Motion to Dismiss under Rule 12(b)(6)**

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A court must accept the plaintiff's factual allegations as true and make inferences in the plaintiff's favor, but it need not accept the plaintiff's legal conclusions. <u>Retro Television Network, Inc. v. Luken Commc'ns, LLC</u>, 696 F.3d 766, 768–69 (8th Cir. 2012). The plaintiff must plead enough facts to "state a claim to relief that is plausible on its face," meaning "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement for relief.'" <u>Iqbal</u>, 556 U.S. at 678 (quoting <u>Twombly</u>, 550 U.S. at 556–57) (internal citation omitted)). When ruling on a Rule 12(b)(6) motion, a court generally ignores materials outside the pleadings but may "consider matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." <u>Dittmer Props., L.P. v. FDIC</u>, 708 F.3d 1011, 1021 (8th Cir. 2013) (cleaned up).

## III.    Discussion and Analysis

As "federal courts are courts of limited jurisdiction," this Court considers Defendants' challenges under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction first. <u>United States v. Afremov</u>, 611 F.3d 970, 975 (8th Cir. 2010). This Court then addresses Defendants' challenges to PFC's claims under Federal Rule of Civil Procedure 12(b)(6).

## A. Subject Matter Jurisdiction

### 1. Procedural Due Process Claim

Defendants attack PFC's procedural due process claim on several grounds. The DANR Defendants contend that this Court lacks subject matter jurisdiction to review PFC's procedural due process claim because 1) PFC lacks standing, 2) because the DANR Defendants enjoy Eleventh Amendment immunity, and 3) the claim is barred by the Rooker-Feldman doctrine. Doc. 41 at 6–12. The City Defendants contend that this Court lacks subject matter jurisdiction over PFC's procedural due process claim because 1) the claim is not ripe and 2) the claim is barred by the Rooker-Feldman doctrine. Doc. 43 at 10–13. This Court addresses these various challenges to subject matter jurisdiction in turn.

### a. Standing

The DANR Defendants first contend that PFC lacks standing to bring a procedural due process claim on behalf of its members. Doc. 41 at 6–9. Broadly speaking, the standing inquiry concerns whether the plaintiff is the appropriate party to bring a particular suit. Raines v. Byrd, 521 U.S. 811, 818 (1997); Flast v. Cohen, 392 U.S. 83, 99–100 (1968). The Supreme Court of the United States has developed a three-part test to determine whether a party has standing to bring a lawsuit.

> [T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc., 528 U.S. 167, 180–81 (2000) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992)). A "concrete" injury means "that it must be real and not abstract." FDA v. All. for Hippocratic Med., 602 U.S. 367, 381 (2024). A "particularized" injury means that it "must affect 'the plaintiff in a personal and individual way'

11

and not be a generalized grievance." Id. (quoting Lujan, 504 U.S. at 560 n.1). "Moreover, the injury must be actual or imminent, not speculative—meaning that the injury must have already occurred or be likely to occur soon." Id. "An allegation of future injury may suffice if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." Susan B. Anthony List v. Driehaus, 573 U.S. 149, 158 (2014) (cleaned up and citation omitted). The Supreme Court of the United States has further required that for associational standing, the association must show "its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Friends of the Earth, 528 U.S. at 181 (citing Hunt v. Wash. State Apple Advert. Comm'n, 432 U.S. 333, 343 (1977)).

A plaintiff bears the burden of establishing standing as of the time the lawsuit was brought and throughout the pendency of the case. See Carney v. Adams, 592 U.S. 53, 59 (2020). "[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek." TransUnion LLC v. Ramirez, 594 U.S. 413, 431 (2021). "A plaintiff must demonstrate standing 'with the manner and degree of evidence required at the successive stages of the litigation.'" Id. at 431 (quoting Lujan, 504 U.S. at 561).

"Courts are cautious with the standing analysis as it relates to procedural due process claims, as it often overlaps with the merits of the case." Hirth v. Iowa Utils. Comm'n, 771 F. Supp. 3d 1058, 1080 (N.D. Iowa 2025) (citing Brooks v. Butler Cnty., No. 21-4129, 2022 WL 2526601, at *4 (6th Cir. July 7, 2022)). "Determining the adequacy of the process is generally a merits question, even if a plaintiff does not use the process provided." Hughes v. City of Cedar Rapids,

840 F.3d 987, 993 (8th Cir. 2016). "The allegations that the procedure is inadequate . . . sufficiently establishes an injury in fact for Article III standing." Id. at 994.

The DANR Defendants first contend that PFC as an organization cannot claim injury from a lack of notice because PFC did not exist at the time the Permit was noticed in the Custer County Chronical in 2020. Doc. 41 at 8. Second, the DANR Defendants argue that PFC's interest in French Creek's water is not "concrete and particularized" because PFC "does not have any property interest beyond that enjoyed by the general public as a beneficiary under the public trust doctrine." Id. The DANR Defendants' third standing argument asserts that the participation of the three individual members is indispensable "to establish the nature and extent of any injury." Id. at 9. PFC counters that its individual members have a personal stake in the outcome because they own land on French Creek that will be detrimentally affected by the discharge of effluent allowed under the Permit, and the members' individual participation is unnecessary. Doc. 53 at 9.

Here, three PFC members have averred that they live near French Creek with their property abutting French Creek, have wells as close as fifty feet and up to 400 feet away from the creek, have livestock that use French Creek for drinking water, and use the creek for recreational purposes including fishing, wading, swimming, and panning for gold dust. Docs. 37-1, 37-2, 37-3. South Dakota Administrative Rule 74:52:05:13 prescribes methods of public notice, and PFC reads subsection (3) to require "the persons potentially affected" by a SWD permit to receive actual notice. Doc. 37 ¶ 26. PFC's three member's averments sufficiently allege that they would be "potentially affected" by the discharge of effluent authorized by the Permit because they own property on French Creek with wells and use French Creek for recreational purposes. Docs. 37-1, 37-2, 37-3. Further, the PFC members' averments establish that the injury to its members is concrete and particularized because the injury (inadequate process) is "real and not abstract" and

13

affects "the plaintiff in a personal and individual way." <u>All. for Hippocratic Med.</u>, 602 U.S. at 381. PFC alleges that its three members did not receive actual notice of the Permit. Doc. 37 ¶ 52. Since the members have alleged that they would be potentially affected by the Permit and did not receive actual notice, the individual members have standing to sue in their own right. <u>See Hughes</u>, 840 F.3d at 994 (finding "allegations that the procedure is inadequate . . . sufficiently established an injury in fact for Article III standing"). The DANR Defendants' argument about PFC lacking a sufficient property interest does not consider its members' riparian landowner rights and right to some notice under ARSD 74:52:05:13.

PFC's members also satisfy the causation and redressability requirements. The members' alleged injury is inadequate process directly traceable to the DANR Defendants' actions during the permitting process satisfying the causation requirement. As to redressability, if this Court awards prospective injunctive relief in favor of PFC, its procedural due process claim is redressed. Thus, taking all the pleaded allegations as true, which this Court must do at this stage, PFC has sufficiently shown that its members have "standing to sue in their own right" satisfying the first prong of associational standing. <u>Friends of the Earth</u>, 528 U.S. at 181.

Since PFC's members would have standing to sue in their own right, this Court next evaluates the remaining elements of associational standing. PFC was organized to prevent the discharge of effluent into French Creek, so the interest at stake here—declaratory or injunctive relief preventing the discharge of effluent in French Creek—is germane to PFC's purpose. Indeed, it apparently is the sole purpose of PFC. Lastly, PFC seeks declaratory and prospective injunctive relief, rather than damages, which generally does not require the participation of individual members. <u>Heartland Acad. Cmty. Church v. Waddle</u>, 427 F.3d 525, 533 (8th Cir. 2005) ("[B]ecause Heartland seeks only declaratory and prospective injunctive relief, the participation

14

of individual [plaintiffs] . . . is not required."). Thus, PFC satisfies the remaining two elements

and has associational standing to bring its procedural due process claim.

### b. Eleventh Amendment Immunity

The DANR Defendants next contend that Eleventh Amendment immunity bars the

procedural due process claim against them. Doc. 41 at 10–12. Generally, the Eleventh

Amendment and doctrine of sovereign immunity immunize a State from suit. Pharm. Rsch. &

Mfrs. of Am. v. Williams, 64 F.4th 932, 948 (8th Cir. 2023). This immunization from suit includes

agencies and departments of the State. See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S.

89, 100 (1984) ("It is clear, of course, that in the absence of consent a suit in which the State or

one of its agencies or departments is named as the defendant is proscribed by the Eleventh

Amendment."). However, Ex Parte Young, 209 U.S. 123 (1908), carves out a narrow exception

"allowing suits for prospective injunctive relief against state officials sued in their official

capacities, but not suits for prospective injunctive relief against state agencies." Wolk v. City of

Brooklyn Ctr., 107 F.4th 854, 858 (8th Cir. 2024) (citing Monroe v. Ark. State Univ., 495 F.3d

591, 594 (8th Cir. 2007)). The two requirements for the Ex Parte Young exception are (1) "an

ongoing violation of federal law" and (2) "the plaintiff must be seeking prospective relief." Filyaw

v. Corsi, 150 F.4th 936, 941 (8th Cir. 2025) (citations omitted). Yet, this exception does not apply

"when a plaintiff alleges that a state official has violated *state* law." Pennhurst, 465 U.S. at 106.

This is because "it is difficult to think of a greater intrusion on state sovereignty than when a federal

court instructs state officials on how to conform their conduct to state law." Id.

The DANR Defendants argue that PFC's procedural due process claim, although disguised

as a federal claim under § 1983, "is at heart a claim that Secretary Roberts did not follow the notice

provisions in ARSD 74:52:05:13." Doc. 41 at 11. Therefore, the DANR Defendants assert that

15

the Ex Parte Young exception does not apply here because the claim is based on state law. Id. PFC contends that the procedural due process claim is not barred by the Eleventh Amendment because the issuance of the Permit is based on a violation of the Fourteenth Amendment's Due Process Clause. Doc. 53 at 22 (citing Driftless Area Land Conservancy v. Valcq, 16 F.4th 508, 521 (7th Cir. 2021).

In Pennhurst, the Supreme Court of the United States held "that a federal suit against state officials on the basis of state law contravenes the Eleventh Amendment." 465 U.S. at 117. There, petitioner brought claims under the Eighth and Fourteenth Amendments, § 504 of the Rehabilitation Act of 1973, the Developmentally Disabled Assistance and Bill of Rights Act, and the Pennsylvania Mental Health and Mental Retardation Act of 1966 (Pennsylvania MH/MR Act) against a Pennsylvania institution for the care of mentally disabled individuals. Id. at 92. The United States Court of Appeals for the Third Circuit determined that the remedy was fully supported by the Pennsylvania MH/MR Act, "and therefore did not reach the remaining issues of federal law." Id. at 95–96. The Third Circuit granted injunctive relief on this state law basis, but the Supreme Court of the United States overturned the Third Circuit concluding that the Ex Parte Young exception did not apply in a suit against state officials on the basis of state law. Id. at 96, 106. There, the only support for the injunctive relief was premised on the Pennsylvania MH/MR Act because the Third Circuit "did not reach the remaining issues of federal law." Id. at 95–96.

In Driftless, however, the Seventh Circuit found that Eleventh Amendment immunity did not prevent a suit against Wisconsin Public Service Commissioners, sued in their official capacities, for a procedural due process claim based on conflicts of interest of the commissioners. Id. at 520–24. The Seventh Circuit, applying Ex Parte Young, premised this decision on whether prospective relief was sought and whether there was an ongoing violation of federal law. Id. at

16

521–23.  The Seventh Circuit held that the plaintiffs were seeking prospective relief because they sought an injunction to prevent the enforcement of the permit in question and that the continued enforcement of the permit was an ongoing violation of federal law because "[a] permit issued in violation of due process remains unlawful as long as it is in force and effect."  Id.  Thus, the Seventh Circuit concluded that sovereign immunity did not bar the suit seeking prospective injunctive relief against the commissioners for alleged due process violations.  Id. at 524.

This Court finds Driftless to be more analogous to the case at hand.  Taking the allegations of the Amended Complaint as true at this stage, PFC's procedural due process claim is a federal claim under the Fourteenth Amendment's Due Process Clause, not a state law claim.  Although the complaint in Pennhurst pleaded federal claims, the only claim that relief was based on was the state law claim under the Pennsylvania MH/MR Act.  465 U.S. 95–96.  That is not the case here. Instead, like in Driftless, PFC seeks an injunction to prevent the enforcement of a permit based on allegedly defective process in violation of the Fourteenth Amendment.  See 16 F.4th at 521–22. PFC seeks prospective relief, satisfying the first prong of Ex Parte Young.  As the Driftless court found, "[a] permit issued in violation of due process remains unlawful as long as it is in force and effect."  Id. at 523.  Here, PFC alleges that the Permit was issued in violation of due process and is still in force and effect.  Thus, PFC has alleged an ongoing violation of federal law.  See id.  At this stage, the Ex Parte Young exception allows the procedural due process claim against Secretary Roberts and unknown officials of the DANR to survive.  See id.  The procedural due process claim is, however, barred against the DANR itself by the Eleventh Amendment.  Pennhurst, 465 U.S. at 100 ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment.").

17

### c. Rooker-Feldman Doctrine

Both the DANR and City Defendants contend that PFC's procedural due process claim is barred by the Rooker-Feldman doctrine. Doc. 41 at 12–13; Doc. 43 at 12–13. The Rooker-Feldman doctrine takes its name from two decisions of the Supreme Court of the United States. Rooker, 263 U.S. 413; Feldman, 460 U.S. 462. The Rooker-Feldman doctrine holds that "'only the United States Supreme Court has been given jurisdiction to review a state-court decision,' so federal district courts generally lack subject-matter jurisdiction over 'attempted appeals from a state court judgment.'" Friends of Lake View Sch. Dist. 25 v. Beebe, 578 F.3d 753, 758 (8th Cir. 2009) (quoting 18B Wright and Miller's Federal Practice and Procedure § 4469 (2d ed. 2002)). "The Rooker-Feldman doctrine . . . is confined to . . . cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005). The Rooker-Feldman doctrine justifies dismissal of the federal suit if four conditions are met: "(1) the federal court plaintiff must have lost in state court, (2) the plaintiff must complain of injuries caused by a state court judgment, (3) the plaintiff must invite district court review and rejection of that judgment, and (4) the state court judgment must have been rendered before the district court proceedings commenced." Christ's Household of Faith v. Ramsey Cnty., 618 F. Supp. 2d 1040, 1044 (D. Minn. 2009); see also Exxon Mobil, 544 U.S. at 284.

The DANR and City Defendants contend that PFC's procedural due process claim based on lack of notice is barred because the Supreme Court of South Dakota ruled on this issue in Preserve French Creek, 10 N.W.3d 233. Doc. 41 at 12–13; Doc. 43 at 12–13. Defendants argue that the Supreme Court of South Dakota declined to review the defective notice argument and thus

18

PFC is now complaining of an injury produced by the state court judgment. Doc. 41 at 13; Doc. 43 at 13. PFC views the state-court action as concerning the ordinance passed by the citizenry of Custer County, not the lack of notice afforded to PFC members. Doc. 53 at 13–14.

Here, the elements of the Rooker-Feldman doctrine are not met. First, the action brought by PFC in state court centered on the enforcement of the local ordinance, not the alleged lack of process afforded to PFC's members. See Preserve French Creek, 10 N.W.3d at 235–36. PFC's loss in state court was not on a procedural due process claim. The Supreme Court of South Dakota specifically stated that it did not consider PFC's notice arguments. Id. at 236 n.1 ("[PFC] argues the notice was defective, claiming actual notice, not publication notice, was required. Since it does not appear on the record before us that [PFC] raised the notice issue below, we will not consider it."). Second, PFC does not complain of injuries stemming from the ordinance not being enforced. Rather PFC seeks redress for the alleged violation of its due process rights. Third, PFC does not invite this Court to review and reject the state court's judgment, because PFC does not ask this Court to enforce the local ordinance. Lastly, although the state-court judgment was rendered before this action was initiated, the judgment did not determine PFC's procedural due process claim. Thus, the elements of the Rooker-Feldman doctrine are not met as to PFC's procedural due process claim.

### d. Ripeness

The City Defendants next contend that PFC's procedural due process claim is not ripe because the City has not yet discharged any effluent into French Creek. Doc. 43 at 11–12. "The issue of ripeness, which has both Article III and prudential components, is one of subject matter jurisdiction." Dakota, Minn. & E. R.R. Corp. v. South Dakota, 362 F.3d 512, 520 (8th Cir. 2004). "Ripeness is . . . designed to prevent the courts, through avoidance of premature adjudication, from

entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." Nat'l Park Hosp. Ass'n v. Dep't of Interior, 538 U.S. 803, 807–08 (2003) (cleaned up and citation omitted). "The touchstone of a ripeness inquiry is whether the harm asserted has matured enough to warrant judicial intervention." Parrish v. Dayton, 761 F.3d 873, 875 (8th Cir. 2014) (cleaned up and citation omitted). "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." Id. at 875–76 (cleaned up) (quoting Texas v. United States, 523 U.S. 296, 300 (1998)).

"In general, plaintiffs are not required to exhaust state administrative remedies prior to bringing an action pursuant to 42 U.S.C. § 1983." Hirth, 771 F. Supp. 3d at 1079–80 (citing Patsy v. Bd. of Regents of Fla., 457 U.S. 496, 516 (1982)). The Eighth Circuit, however, has recognized that in some circumstances a plaintiff must exhaust state remedies before bringing a procedural due process claim in federal court. See Hopkins v. City of Bloomington, 774 F.3d 490, 492 (8th Cir. 2014); Wax 'n Works v. City of St. Paul, 213 F.3d 1016, 1019 (8th Cir. 2000). "However, it is not necessary for a litigant to have exhausted available *postdeprivation* remedies when the litigant contends that he was entitled to *predeprivation* process." Keating v. Neb. Pub. Power Dist., 562 F.3d 923, 929 (8th Cir. 2009).

The City Defendants contend that PFC's procedural due process claim is not ripe because the City has not yet discharged effluent into French Creek and any property interest of PFC or its members is unaffected. Doc. 43 at 11–12. This argument, however, is beside the point as it concerns the procedural due process claim. PFC alleges that the issuance of the permit was the constitutional deprivation, not the discharge of effluent into French Creek. See Doc. 37 ¶ 53 ("In

approving the effluent discharge allowed under the [] Permit, Defendants . . . acted under color of state law to deprive Plaintiff of their property rights without affording procedural due process . . . ."). The deprivation PFC alleges as the basis for its claim has occurred and is ripe for review. Additionally, since PFC alleges that it was denied pre-deprivation process during the issuance of the Permit, it is not required to exhaust state administrative remedies before bringing its procedural due process claim in federal court. See Keating, 562 F.3d at 929. Taking all the pleaded allegations as true, PFC's procedural due process claim is ripe for this Court's review.

### 2. Clean Water Act Claim

Defendants contend that PFC's CWA claim should be dismissed under Federal Rule of Civil Procedure 12(b)(1) because it is not ripe for this Court's review. Doc. 41 at 9–10; Doc. 43 at 17; Doc. 47 at 5–6. As this Court has addressed above, "[r]ipeness is . . . designed to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." Nat'l Park Hosp. Ass'n, 538 U.S. at 807–08 (citation omitted). "The touchstone of a ripeness inquiry is whether the harm asserted has 'matured enough to warrant judicial intervention.'" Parrish, 761 F.3d at 875 (citation omitted). "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." Parrish, 761 F.3d at 875–76 (quoting Texas v. United States, 523 U.S. at 300).

Defendants contend that PFC's CWA claim is not ripe because the City has not discharged any effluent into French Creek. Doc. 41 at 9–10; Doc. 43 at 17; Doc. 47 at 5–6. Defendants argue that since there has been no discharge, PFC's claim is not ripe because it is unclear whether 1) the

21

City will discharge any effluent under the Permit before it expires on March 31, 2026, or 2) the City will discharge effluent in excess of what the Permit allows. See Doc. 41 at 10. PFC counters that the facts they allege are sufficient to establish "imminent violations of effluent standards and the SWD Permit." Doc. 53 at 24. PFC also argues that various violations of South Dakota's Administrative Rules, including violations of effluent limitations and failure to give actual notice, constitute a viable avenue to bring a CWA claim against the Defendants. Id. at 25–26.

> Under what is termed the "citizen suit provision,"
>
> any citizen may commence a civil action on his own behalf--
> (1) against any person . . . who is alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation, or
> (2) against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator.

33 U.S.C. § 1365(a). A person has protection against a suit, however, under what is known as the "permit shield provision." See 33 U.S.C. § 1342(k). Under this provision, "[c]ompliance with a permit issued pursuant to this section shall be deemed compliance, for purposes of sections 1319 [(state enforcement action)] and 1365 [(Citizen Suit Provision)] of this title, with sections 1311, 1312, 1316, 1317, and 1343 of this title . . . ." Id.

PFC's CWA claim is not ripe for this Court's review. As PFC concedes, no discharge into French Creek has occurred yet. See Doc. 37 ¶ 45. ("To date, DRG [sic] Engineering is continuing construction on the project that *would allow* for effluent discharge into French Creek.") (emphasis added). Because the City has not discharged any effluent yet, there has not been a violation of an effluent standard or limitation. Further, even if the City had discharged effluent into French Creek, the City had obtained the Permit, which allows it to discharge effluent into French Creek under certain restrictions imposed by the Permit. If the City remains compliant with the Permit, the City

is deemed compliant with the CWA for purposes of the "Citizen Suit Provision." 33 U.S.C. § 1342(k). Whether the City will remain compliant with the Permit is based upon "contingent future events that may not occur as anticipated, or indeed may not occur at all," Parrish, 761 F.3d at 875–76 (quoting Texas v. United States, 523 U.S. at 300), making PFC's CWA claim not ripe for this Court's review. Since PFC's CWA claim is not ripe, this Court lacks jurisdiction over the CWA claim.

### B. Failure to State a Claim

### 1. Procedural Due Process

The DANR and City Defendants next argue that PFC's procedural due process claim is time-barred by South Dakota's three-year statute of limitations. Doc. 41 at 12; Doc. 43 at 15–16. "A court may dismiss a claim under Rule 12(b)(6) as barred by the statute of limitations if the complaint itself establishes that the claim is time-barred." Humphrey v. Eureka Gardens Pub. Facility Bd., 891 F.3d 1079, 1081 (8th Cir. 2018) (quoting Illig v. Union Elec. Co., 652 F.3d 971, 976 (8th Cir. 2011)). "Section 1983 provides a federal cause of action, but in several respects relevant federal law looks to the law of the State in which the cause of action arose. This is so for the length of the statute of limitations . . . ." Wallace v. Kato, 549 U.S. 384, 387 (2007). Under South Dakota law, the statute of limitations for a constitutional claim such as this is three years. See SDCL § 15-2-15.2 ("Any action brought under the federal civil rights statutes may be commenced only within three years after the alleged constitutional deprivation has occurred.").

The DANR and City Defendants argue that the statute of limitations for PFC's procedural due process claim began to run when the DANR issued the Permit on January 13, 2021. Doc. 41 at 12; Doc. 43 at 16. Accordingly, the latest date PFC could have brought its procedural due process claim was January 12, 2024. Id. PFC did not initiate this lawsuit until May 15, 2025. See

23

Doc. 1 (filed on May 15, 2025). Thus, Defendants contend PFC's procedural due process claim is time-barred. Id.

"Section 1983 claims accrue 'when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief.'" Humphrey, 891 F.3d at 1081 (quoting Wallace, 549 U.S. at 388). "To determine when a plaintiff has a complete and present cause of action, the court focuses on the specific constitutional right alleged to have been infringed." Reed v. Goertz, 598 U.S. 230, 235–36 (2023). Here, the specific constitutional right allegedly infringed is procedural due process. "A procedural due process claim consists of two elements: (i) deprivation by state action of a protected interest in life, liberty, or property, and (ii) inadequate state process." Id. at 236. "Importantly, the Court has stated that a procedural due process claim 'is not complete when deprivation occurs.' Rather, the claim is 'complete' only when 'the State fails to provide due process.'" Id. (internal citation omitted) (quoting Zinermon v. Burch, 494 U.S. 113, 126 (1990)).

Here, PFC alleges that its procedural due process rights were infringed when the DANR issued the Permit to the City to discharge effluent into French Creek. Doc. 37 at 10. ("In approving the effluent discharge allowed under the [] Permit, Defendants . . . acted under color of state law to deprive Plaintiff of their property rights."). Assuming that PFC has a protected interest in French Creek,[8] the DANR issued the Permit on January 13, 2021. Doc. 37 ¶ 22. The inadequate state process—defective notice—occurred before the issuance of the Permit. Thus, by January 13,

---

[8] Under the public trust doctrine in South Dakota: "The State holds the waters in trust for the benefit of the public . . . ." Duerre v. Hepler, 892 N.W.2d 209, 222 (S.D. 2017). "The Landowners, . . . as riparian owners, possess a right to use and enjoy the waters, including 'for all useful purposes to which it may be applied.' The Landowners' rights, however, are qualified by State law and by the public's superior right to use the waters for public purposes." Id. at 223 (internal citation omitted).

2021,[9] the alleged constitutional deprivation and inadequate state process had occurred, and the statute of limitations on PFC's procedural due process claim expired on January 12, 2024. See SDCL § 15-2-15.2. Because PFC did not initiate this action until May 15, 2025, over a year after the statute of limitations had run, its due process claim is barred by the statute of limitations. See Doc. 1 (filed on May 15, 2025).

### 2. Clean Water Act Claim

Even if this Court found PFC's CWA claim to be ripe, the CWA claim still fails to state a claim under Federal Rule of Civil Procedure 12(b)(6). The CWA "forbids the addition of any pollutant from a point source to navigable waters without the appropriate permit from the [EPA]." Cnty. of Maui v. Haw. Wildlife Fund, 590 U.S. 165, 169 (citation and internal marks omitted). Under the act, "the discharge of any pollutant by any person without an appropriate permit shall be unlawful." Id. at 171 (citation and internal marks omitted). Thus, to state a CWA claim, a plaintiff must allege a discharge of a pollutant from a point source into a navigable water either without a permit or in violation of a permit. See id.; see also EPA v. City of Green Forest, 921 F.2d 1394, 1399 (8th Cir. 1990) (explaining that the Citizen Suit Provision "permits private citizens to commence a civil action in certain situations against anyone who is alleged to be in violation of . . . an effluent standard or limitation under this chapter, which includes a federal or state NPDES permit or condition thereof") (internal marks and citation omitted).

Similar to this Court's analysis above regarding the ripeness of PFC's CWA claim, the claim fails under Rule 12(b)(6) for two reasons. First, PFC has not alleged that the City has discharged any pollutant. Indeed, the allegations in the Complaint make clear that no discharge

---

[9] This Court realizes that PFC did not form until 2023. Doc. 37 ¶ 7. But those who claim violation of their procedural due process rights cannot circumvent a statute of limitations simply by forming an entity as a vehicle to pursue relief.

has occurred yet. See Doc. 37 ¶ 45. Since there has been no discharge of a pollutant, PFC fails to state a viable CWA claim. Second, even if the City had discharged a pollutant into French Creek, the City has obtained a SWD permit from the appropriate state agency in accord with the NPDES. "Under what is known as the 'permit shield' provision, an entity that adheres to the terms of its permit is deemed to be compliant with the Act." City and Cnty. of San Francisco v. EPA, 604 U.S. 334, 341 (2025) (citing 33 U.S.C. § 1342(k)). Under the "permit shield" the City is compliant with the CWA so long as it abides by the terms of the Permit. PFC acknowledges that the City has obtained the Permit but does not, and cannot, allege that the City is not in compliance with the Permit because the City has not discharged any effluent into French Creek. Thus, PFC fails to allege that the City is not in compliance with the Permit and fails to state a viable CWA claim. See City and Cnty. of San Francisco, 604 U.S. at 341 (citing 33 U.S.C. § 1342(k)).

### C. Remaining State Law Claims

PFC's remaining claims against Defendants are based in state law, and there is no complete diversity of citizenship here. To consider such state law claims, this Court would have to exercise supplemental jurisdiction under 28 U.S.C. § 1367(a), which permits a district court to handle state law claims that are a part of the same case or controversy as the claims that fall within the district court's original jurisdiction. 28 U.S.C. § 1367(a). Generally, federal courts decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c)(3) if "the district court has dismissed all claims over which it has original jurisdiction" unless the case is close to or amid trial or other such reasons exist to retain jurisdiction. 28 U.S.C. § 1367(c)(3); see also Zutz v. Nelson, 601 F.3d 842, 850 (8th Cir. 2010). "The district court is afforded broad discretion in determining whether to exercise supplemental jurisdiction." Crest Constr. II, Inc. v. Doe, 660 F.3d 346, 359 (8th Cir. 2011). "Courts should exercise judicial restraint and avoid state law issues wherever possible . . .

26

." <u>Magee v. Trs. of the Hamline Univ.</u>, 957 F. Supp. 2d 1047, 1060 (D. Minn. 2013). Because PFC's federal claims against Defendants have been dismissed, this Court declines to exercise supplemental jurisdiction over PFC's state law claims. <u>See</u> <u>Mountain Home Flight Serv., Inc. v. Baxter Cnty.</u>, 758 F.3d 1038, 1045 (8th Cir. 2014) (district court acted within its discretion declining to exercise supplemental jurisdiction after dismissing §1983 claims).

## IV.    Conclusion

For the reasons discussed above, it is hereby

ORDERED that the DANR Defendants' Motion to Dismiss, Doc. 40, is granted. It is further

ORDERED that the City Defendants' Motion to Dismiss, Doc. 42, is granted. It is finally

ORDERED that DGR Engineering's Motion to Dismiss, Doc. 44, is granted. The entirety of PFC's Complaint is dismissed without prejudice.

DATED this ___9__ day of March, 2026.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE